# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **KATHLEEN HANOVER**, 314 Willowood Dr Dayton, OH 45405 <br><br> Plaintiff, <br><br> v. <br><br> **REAL TIME RESOLUTIONS, INC.**, ℅ CT Corporation System, Registered Agent 4400 Easton Commons Way, Ste. 125 Columbus, OH 43219 <br><br> Defendant. | Case No. <br><br> Judge <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Kathleen Hanover, through counsel, for her Complaint for Damages against Defendant Real Time Resolutions, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Kathleen Hanover ("Hanover") is a natural person who is a resident of Montgomery County, Ohio.

2. Hanover is the owner of residential real property, located at and commonly known as 314 Willowood Dr., Dayton, OH 45405 (the "Home").

3. Hanover currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

4. Defendant Real Time Resolutions, Inc. ("RTR") is a foreign corporation incorporated under the laws of the State of Texas that maintains its headquarters and principal place of business at 1349 Empire Central Dr., Ste. 150, Dallas, TX 75247-4029.

5. Upon further belief, the primary business practice of RTR is the purchaser and collection of non-first lien residential mortgage loans in default.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) as this action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

7. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

9. Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692(a).

10. Hanover has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

11. Hanover asserts statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA) and quiet title.

12. On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to R.C. 1322.01, *et seq.*, formerly the Ohio Mortgage Brokers Act (OMBA). HB 199 substantially broadened the scope of the statute, now called the Ohio Residential Mortgage Lending Act, to apply to mortgage lenders.

13. On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of R.C. 1322.01, et seq., to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

2

## FACTUAL BACKGROUND

14. On or about December 18, 2006, Hanover entered into a Home Equity Line of Credit Agreement and Promissory Note Loan and Open-End Mortgage (the "HELOC") with non-party GreenPoint Mortgage Funding, Inc. ("GreenPoint").

15. GreenPoint went out of business in 2007.

16. On or about September 29, 2012, RTR sent Hanover a letter claiming that servicing of the HELOC has transferred from Countrywide/GreenPoint to RTR (the "Transfer Letter"). A copy of the September 2012 Letter is attached as **Exhibit 1**.

17. In the Transfer Letter, RTR claimed that Hanover owed a balance of $17,397.38 and stated a payoff amount of $19.390.82 (the "Alleged Debt"). *See* Exhibit 1.

18. In the Transfer Letter, RTR describes itself as a specialist "in the recovery and rehabilitation of secured and unsecured debts" and admits that "[t]his communication is from a debt collector. This is an attempt to collect a debt." *See* Exhibit 1.

19. On or about October 8, 2012, Hanover sent a letter to RTR in response to the Transfer Letter (the "Request for Validation") requesting that RTR validate the Alleged Debt pursuant to the procedures as outlined by 15 U.S.C. § 1692g and provide proof that it was authorized to collect payments on the Alleged Debt. A copy of the Request for Validation is attached as **Exhibit 2**.

20. In or about May 2013, RTR sent a letter to Hanover in response to the Request for Validation (the "RTR Response"). A copy of the RTR Response is attached as **Exhibit 3**.

21. The RTR Response failed to provide Hanover with any evidence that RTR was authorized to collect payments on the Alleged Debt. *See* Exhibit 3.

3

22. In August 2018, RTR sent Hanover a collection notice, and Hanover contacted her attorney.

23. On or about August 8, 2018, Hanover, through her attorney, sent RTR a letter in response to the collection notice (the "August 2018 Letter"). A copy of the August 2018 Letter is attached as **Exhibit 4**.

24. The August 2018 Letter reminded RTR that it failed to provide Hanover with any evidence that RTR was authorized to collect payments on the Alleged Debt, advised that Hanover disputed any liability, and requested full written documentation and verification of the Alleged Debt. *See* Exhibit 4.

25. On or about August 22, 2018, RTR provided a response to the August 2018 Letter (the "August 2018 Response"). A copy of the August 2018 Response is attached as **Exhibit 5**.

26. RTR again failed to provide Hanover with any evidence that RTR was authorized to collect payments on the Alleged Debt. *See* Exhibit 5.

27. Despite failing to validate the Alleged Debt twice, RTR continues to attempt to collect payment on the Alleged Debt. RTR sent communications to Hanover dated June 25, September 30, October 27, October 31, November 30, December 22, and December 31, 2021 attempting to collect payment on the Alleged Debt (the "2021 Communications"). Copies of the 2021 Communications are attached as **Exhibit 6**.

28. RTR's 2021 Communications state that Hanover's account became delinquent on 07/26/2011. *See* Exhibit 6.

29. RTR's 2021 Communications state that RTR is attempting to collect on the Alleged Debt on behalf of RRA CP Opportunity Trust 1 ("RRA"). *See* Exhibit 6.

30. As a result of RTR's actions, Hanover has suffered damages including but not limited to:

 a. Amounts demanded by RTR that it is not entitled to receive;

 b. Hanover wishes to sell the Home but cannot without paying for amounts that RTR cannot legally collect; and,

 c. Severe emotional distress relating to RTR's demands and threats to file foreclosure actions which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## COUNT ONE
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692, *et seq.*

31. Hanover restates and incorporates all of the statements and allegations contained in paragraphs 1 through 30 in their entirety, as if fully rewritten herein.

32. Hanover is a "consumer" as she is a natural person and resident of Montgomery County, Ohio obligated or allegedly obligated to pay the Alleged Debt. 15 U.S.C. § 1692a(3).

33. The Alleged Debt is a "debt" because it is an obligation or alleged obligation of Hanover to pay money arising out of a transaction primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

34. RTR is a "debt collector" because it uses the instrumentality of interstate commerce or mail in its business, which has the principal purpose of the collection of debts. 15 U.S.C. § 1692a(6).

35. RTR is a "debt collector" because it regularly collects or attempts to collect on debts represented by the Loan and other mortgage loans owed to creditors, such as RRA. 15 U.S.C. § 1692a(6).

36. RTR admits it is a "debt collector" collecting on behalf of RRA in the 2021 Communications. *See* <u>Exhibit 6</u>.

37. RTR sent the 2021 Communications to Hanover in an attempt to collect on the Alleged Debt, despite twice failing to provide verification to Hanover that it is authorized to collect on the Alleged Debt.

38. RTR violated 15 U.S.C. § 1692g(b) by failing to cease its collection attempts on the Alleged Debt before mailing verification to Hanover as she had requested.

39. RTR violated 15 U.S.C. § 1692e(10) when it used deceptive means, failing to cease collection attempts before mailing verification to Hanover, to attempt to collect on the Alleged Debt.

40. RTR violated 15 U.S.C. §1692f because its conduct as outlined herein constitutes unfair or unconscionable means to attempt to collect a debt.

41. As a result of RTR's conduct, RTR is liable to Hanover for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

42. As a result of RTR's conduct, RTR is liable to Hanover for actual damages, as further described, *supra*, and statutory damages. 15 U.S.C. § 1692k(a)(1)-(2).

43. Additionally, Hanover requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## COUNT TWO
## VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

44. Hanover restates and incorporates all of the statements and allegations contained in paragraphs 1 through 30 in their entirety, as if fully rewritten herein.

45. RTR is subject to the requirements of the RMLA, and does not qualify for the exemptions listed in R.C. 1322.04.

46. "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A)(1).

47. The RMLA defines a mortgage servicer as:

> [A] person that, for compensation or gain for itself or on behalf of the holder of a residential mortgage loan, holds the servicing rights for more than five residential mortgage loans, records mortgage payments on its books for more than five residential mortgage loans, or performs other functions to carry out the residential mortgage holder's obligations or rights under the mortgage agreement for more than five residential mortgage loans including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company.

R.C. 1322.01(BB).

48. RTR is a mortgage servicer under the RMLA as it claims to possess the "collection duties associated with [Hanover's] mortgage loan, that is the right to collect payments from you." See Exhibit 1.

49. On information and belief, RTR holds the servicing rights and acts as a mortgage servicer for more than five residential mortgage loans, as RTR describes itself as a specialist "in the recovery and rehabilitation of secured and unsecured debts." See Exhibit 1.

50. RTR, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322, *et seq*.

51. RTR is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.501540.000 and RM.501540.001-BR. R.C. 1322.01(HH).

52. Hanover qualifies as a buyer, as RTR, a mortgage servicer, claims to be servicing Hanover's mortgage loan. R.C. 1322.01(I).

53. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq* , cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

54. RTR's conduct in sending the 2021 Communications to Hanover in an attempt to collect on the Alleged Debt, despite twice failing to provide verification to Hanover that it is authorized to collect on the Alleged Debt, constitutes violations of R.C. 1322.40(C).

55. RTR's conduct caused Hanover to suffer actual damages, as further described, *supra*.

56. As a result of RTR's conduct, RTR is liable to Hanover for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

57. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
>
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

58. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

59. RTR's conduct in sending the 2021 Communications to Hanover in an attempt to collect on the Alleged Debt, despite twice failing to provide verification to Hanover that it is authorized to collect on the Alleged Debt, constitutes violations of R.C. 1322.45(A).

60. As a result of RTR's conduct, RTR is liable to Hanover for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

61. Hanover's request for punitive damages is supported by the factual circumstances. Despite Hanover first requesting verification of the Alleged Debt in October 2012, RTR has failed to provide such verification and has continued to attempt to collect on the Alleged Debt for over nine (9) years.

## COUNT THREE
## QUIET TITLE

62. Hanover restates and incorporates all of the statements and allegations contained in paragraphs 1 through 30 in their entirety, as if fully rewritten herein.

63. Hanover is the current owner of the Home.

64. RTR may claim an interest in the Home that is adverse to Hanover's own interest, thereby creating a cloud on the title of the Home.

65. The aforementioned cloud on the Home prevents Hanover from the unencumbered enjoyment of her premises.

66. Pursuant to R.C. 5303.01, Hanover is entitled to an order quieting title as to the interest of RTR in the Home.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Kathleen Hanover requests that this Court enter an order granting judgment against Defendant Real Time Resolutions, Inc. for the following:

A. For an award of actual damages in an amount to be determined at trial as to the allegations contained in Counts One and Two;

B. For an award of statutory damages of $1,000.00 as to the allegations contained in Count One;

C. For punitive damages as to the allegations contained in Count Two;

D. For an award of Hanover's reasonable attorneys' fees and costs in the prosecution of this action for the allegations contained in Counts One and Two;

E. For an order quieting title as to the allegations of Count Three;

F. For an order requiring Defendant Real Time Resolutions, Inc. to answer and establish its interest in the Home, or be barred from claiming any interest therein; and,

G. For all such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Brian D. Flick*
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Hanover hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

>	*/s/ Brian D. Flick*
>	Brian D. Flick (0081605)